IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| NATALIE ANDERSON, TIFFANY VASQUEZ, and BRIANA BALDERAS<br><br>*Plaintiffs,*<br><br>v.<br><br>RUIZ AND LOUVIN ENTERPRISES, LLC, ERIC LOUVIN, MEGAN LOUVIN,<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§     CASE NO. 5:23-cv-00911 |

**DEFENDANTS' SECOND AMENDED ANSWER AND COUNTERCLAIMS**

RUIZ AND LOUVIN ENTERPRISES, LLC, ERIC LOUVIN, AND MEGAN LOUVIN, ("Defendants") in the above-styled litigation, files this Original Answer and counterclaims to Plaintiffs, Natalie Anderson, Tiffany Vasquez, and Briana Balderas' Original Complaint. In support hereof, Defendants will show the Court as follows:

**I.    NATURE OF SUIT.**

1. Defendants admit Plaintiffs Natalie Anderson, Tiffany Vasquez, and Briana Balderas ("Plaintiffs") purport to recover overtime wages, lost wages, liquidated damages, and attorney's fees, individually and on behalf of all other similarly situated individuals, pursuant to the Fair Labor Standards Act ("FLSA"); Defendants generally denies Plaintiffs or the persons on whose behalf they purport to sue are entitled to any relief sought therein or that Defendants violated the FLSA or any law.

2. Defendants deny Plaintiffs or the persons on whose behalf they purport to sue are entitled to any relief sought therein or that Defendants violated the FLSA or any law.

1

3. Defendants deny Plaintiffs or the persons on whose behalf they purport to sue are entitled to any relief sought therein or that Defendants violated the FLSA or any law.

## II.   THE PARTIES

4. Defendants admit Plaintiff Natalie Anderson was employed by Defendants. However, Defendants are without information sufficient as to the truth of the remaining allegations contained in paragraph 4, and therefore denies same.

5. Defendants admit Plaintiff Tiffany Vasquez was employed by Defendants. However, Defendants are without information sufficient as to the truth of the remaining allegations contained in paragraph 5, and therefore denies same.

6. Defendants admit Plaintiff Briana Balderas was employed by Defendants. However, Defendants are without information sufficient as to the truth of the remaining allegations contained in paragraph 6, and therefore denies same.

7. Defendants deny the allegations contained in paragraph 7.

8. Defendants admit the allegations contained in paragraph 8.

9. Defendants admit the allegations contained in paragraph 9.

10. Defendants do not need to admit or deny the allegations contained in paragraph 10 because they are legal conclusions, but to the extent a response is required, Defendants deny same.

11. Defendants deny the allegations contained in paragraph 11.

12. Defendants do not need to admit or deny the allegations contained in paragraph 12 because they are legal conclusions, but to the extent a response is required, Defendants deny same.

13. Defendants admit the allegations contained in paragraph 13.

14. Defendants lack personal knowledge of the meaning of "managerial responsibilities" and "substantial control;" therefore, Defendants deny the allegations contained in paragraph 14.

15. Defendants deny the allegations contained in paragraph 15.

16. Defendants deny the allegations contained in paragraph 16.

17. Defendants deny the allegations contained in paragraph 17.

18. Defendants deny the allegations contained in paragraph 18.

19. Defendants admit the allegations contained in paragraph 19.

### III.   THE PARTIES

20. Defendants admit Plaintiffs purport to bring their action pursuant to the FLSA, 28 U.S.C. § 1331, and 29 U.S.C. § 216(b), but it denies Plaintiffs or the persons on whose behalf they purport to sue are entitled to any relief sought therein or that Defendants violated the FLSA or any other law.

21. Defendants do not need to admit or deny the allegations contained in paragraph 21 because they are legal conclusions, Defendants admit its principal place of business is in Bexar County, Texas, but denies same to the extent a response is required.

### IV.   COVERAGE UNDER THE FLSA

22. Defendants do not need to admit or deny the allegations contained in paragraph 22 because they are legal conclusions, but to the extent a response is required, Defendants deny same.

23. Defendants do not need to admit or deny the allegations contained in paragraph 23 because they are legal conclusions, but to the extent a response is required, Defendants deny same.

24. Defendants do not need to admit or deny the allegations contained in paragraph 24 because they are legal conclusions, but to the extent a response is required, Defendants deny same.

25. Defendants do not need to admit or deny the allegations contained in paragraph 25 because they are legal conclusions, but to the extent a response is required, Defendants deny same.

26. Defendants do not need to admit or deny the allegations contained in paragraph 26 because they are legal conclusions, but to the extent a response is required, Defendants deny same.

27. Defendants do not need to admit or deny the allegations contained in paragraph 27 because they are legal conclusions, but to the extent a response is required, Defendants deny same.

## V.     FACTUAL ALLEGATIONS

28. Defendants admit the allegations contained in paragraph 28.

29. Defendants do not admit or deny the allegations contained in paragraph 29; however Defendants do admit Anderson was employed.

30. Defendants do not admit or deny the allegations contained in paragraph 30; however Defendants do admit Anderson was employed.

31. Defendants admit the allegations contained in paragraph 31.

32. Defendants deny the allegations contained in paragraph 32.

33. Defendants do not need to admit or deny the allegations contained in paragraph 33 because they are legal conclusions, but to the extent a response is required, Defendants deny same.

34. Defendants do not need to admit or deny the allegations contained in paragraph 34 because they are legal conclusions, but to the extent a response is required, Defendants deny same.

35. Defendants do not admit or deny the allegations contained in paragraph 35; however Defendants do admit Anderson was employed.

36. Defendants deny the allegations contained in paragraph 36.

37. Defendants do not admit or deny the allegations contained in paragraph 37; however Defendants do admit Vasquez was employed.

38. Defendants admit the allegations contained in paragraph 38.

39. Defendants deny the allegations contained in paragraph 39.

40. Defendants do not need to admit or deny the allegations contained in paragraph 40 because they are legal conclusions, but to the extent a response is required, Defendants deny same.

41. Defendants do not need to admit or deny the allegations contained in paragraph 41 because they are legal conclusions, but to the extent a response is required, Defendants deny same.

42. Defendants do not admit or deny the allegations contained in paragraph 42; however Defendants do admit Vasquez was employed.

43. Defendants deny the allegations contained in paragraph 43.

44. Defendants do not admit or deny the allegations contained in paragraph 44; however Defendants do admit Balderas was employed.

45. Defendants admit the allegations contained in paragraph 45.

46. Defendants deny the allegations contained in paragraph 46.

47. Defendants do not need to admit or deny the allegations contained in paragraph 47 because they are legal conclusions, but to the extent a response is required, Defendants deny same.

48. Defendants do not need to admit or deny the allegations contained in paragraph 48 because they are legal conclusions, but to the extent a response is required, Defendants deny same.

49. Defendants do not admit or deny the allegations contained in paragraph 49; however Defendants do admit Balderas was employed.

50. Defendants deny the allegations contained in paragraph 50.

51. Defendants do not admit or deny the allegations contained in paragraph 51; however Defendants do admit Plaintiffs were employed.

52. Defendants deny the allegations contained in paragraph 52.

53. Defendants deny the allegations contained in paragraph 53.

54. Defendants deny the allegations contained in paragraph 54.

## VI.   CAUSE OF ACTION

55. Defendants re-alleges all of the preceding paragraphs as if fully rewritten herein.

56. Defendants do not need to admit or deny the allegations contained in paragraph 56 because they are legal conclusions, but to the extent a response is required, Defendants deny same.

## VII.   PRAYER FOR RELIEF

Defendants do not need to admit or deny the allegations contained in the paragraphs under "PRAYER FOR RELIEF" beginning with "WHEREFORE," but it denies all allegations contained therein and that Plaintiffs or the persons on whose behalf they purport to sue are entitled to any relief sought therein.

## **AFFIRMATIVE DEFENSES**

For further answer, if any is necessary, Defendants plead the following affirmative defenses in the alternative:

1. Defendants assert limitations on all wage claims sought for pay periods beginning more than two years prior to the date Plaintiffs filed the Complaint and their opt-in consent form.

2. Defendants assert limitations on all wage claims sought for pay periods beginning more than two years prior to the date each putative opt-in plaintiff filed or files his or her respective opt-in consent form.

3. The Complaint is barred in whole or in part by all applicable statutes of limitation, including, but not limited to, those described in 29 U.S.C. § 255.

4. Although Defendants deny the allegations of unlawful conduct as set forth in the Complaint, neither Plaintiffs nor any of the persons on whose behalf they purport to sue are entitled to liquidated damages because at all relevant times, all acts or omissions they claim Defendants (including its officers, managers, and agents) violated regarding their rights afforded by the FLSA were not willful; Defendants (including its officers, managers, and agents) acted in good faith with respect to

>Plaintiffs and all persons on whose behalf they purport to sue and in conformity with the FLSA and administrative practices and enforcement policies of the Department of Labor; Defendants (including its officers, managers, and agents) had reasonable grounds to believe it complied with the FLSA; Defendants (including its officers, managers and agents) did not authorize or ratify any willful violation with respect to Plaintiffs or all persons on whose behalf they purport to sue; and Plaintiffs and all persons on whose behalf they purport to sue failed to plead facts sufficient to support recovery of such damages.

5. Alternatively, all claims for liquidated damages are limited to the time period of two years or, in the alternative, three years prior to the date Plaintiffs filed the Complaint and their opt-in consent form and two years or, in the alternative, three years prior to the date all persons on whose behalf Plaintiffs purport to sue filed their respective opt-in consent forms.

6. Plaintiffs and all persons on whose behalf they purport to sue are not entitled to and cannot recover attorneys' fees.

7. Plaintiffs and all persons on whose behalf they purport to sue are not entitled to compensation for hours they purportedly worked without Defendants' actual or constructive knowledge.

8. Although Defendants denies violating the FLSA, any such failure on the part of Defendants to comply with the FLSA for the disputed time for which Plaintiffs and all persons on whose behalf they purport to sue claim as unpaid is not compensable under the de minimus doctrine and rounding regulations.

9. The claims set forth in the Complaint are barred in whole or in part by the doctrine of payment because (i) Defendants properly compensated Plaintiffs and all persons

on whose behalf he purports to sue for all time worked in accordance with the FLSA and (ii) Defendants paid Plaintiffs and all persons on whose behalf they purport to sue for additional time including, without limitation, premium payments as recognized under 29 U.S.C. § 207(e) and for time paid but not worked by Plaintiffs.

10. The claims are barred in whole or part to the extent the work or Plaintiffs and all persons on whose behalf they purport to sue fell within exemptions, exclusions, or credits provided by the FLSA.

11. To the extent either Plaintiffs or any persons on whose behalf they purport to sue are entitled to damages, Defendants is entitled to a credit for or set off against amounts overpaid to them in the course of their employment, as well as a credit for overtime and other premium payments already made to them.

12. The claims of Plaintiffs and all persons on whose behalf they purport to sue are barred by the doctrines of laches, waiver, and estoppel by reason of their acts, omissions, and course of conduct.

13. Plaintiffs and all persons on whose behalf they purport to sue had and have a duty to mitigate their alleged damages. The Court should reduce or offset such damages, if any, by the failure to mitigate damages or based upon successful mitigation efforts.

14. The claims are barred to the extent they seek recovery for time that is not compensable.

15. Plaintiffs and all persons on whose behalf they purport to sue are not sufficiently similarly situated to the "class members" to warrant or justify the certification and treatment of this case as a collective action under FLSA §216(b).

16. Neither Plaintiffs nor any of the persons on whose behalf they purport to sue may pursue any FLSA claims on behalf of anyone who has not or does not join this action or consent to join this action under 29 U.S.C. §216(b).

17. Plaintiffs and all persons on whose behalf they purport to sue are not similarly situated, and their dissimilarities make the purported class of opt-in plaintiffs inappropriate for a collective action case under the FLSA, and therefore the Court should not grant final certification for the purported class under the FLSA.

18. This class action suit is improper because the purported class is not so numerous that joinder of all members would be impracticable.

19. This class action suit is improper because there are not questions of law or fact common to the purported class.

20. This class action suit is improper because the claims and defenses of the representative parties are not typical of the claims or defenses of the class.

21. This class action suit is improper because questions of law or fact common to the purported members of the class do not predominate over any questions affecting only individual members.

22. This class action suit is improper because moving forward as a class is not superior to other available methods for the fair and efficient adjudication of the controversy.

23. This class action suit is improper because the representative parties and their counsel will not fairly and adequately protect the interests of the purported class.

24. The Seventh and Fourteenth Amendments to the United States Constitution prohibit a jury from determining Defendants' liability or alleged damages to Plaintiffs and others with whom they are allegedly "similarly situated" on a group or aggregated basis.

## **PRAYER FOR RELIEF**

Defendants pray the Court (1) enter judgment in Defendants' favor on all claims of Plaintiffs, and those on whose behalf they purport to sue; (2) alternatively, any damages awarded be reduced or barred, pursuant to Defendants' defenses and affirmative defenses; and (3) grant such other and further relief, both at law and in equity, to which Defendant may be justly entitled.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **NATALIE ANDERSON, TIFFANY VASQUEZ, and BRIANA BALDERAS** | § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | **CASE NO. 5:23-cv-00911** |
| **RUIZ AND LOUVIN ENTERPRISES, LLC, ERIC LOUVIN, MEGAN LOUVIN,** | § § § § § | |
| *Defendants.* | § | |

### DEFENDANT RUIZ AND LOUVIN ENTERPRISES' COUNTERCLAIMS

NOW COMES Ruiz and Louvin Enterprises ("Counter-Plaintiff") complaining of and about Natalie Anderson. ("Counter-Defendant" or "Ms. Anderson"), by and through the undersigned counsel, and files this, Original Counterclaims, and states the following:

### PARTIES

1. Counter-Plaintiff RUIZ AND LOUVIN ENTERPRISES, LLC is a limited liability company domesticated in the State of Texas.

2. Counter-Defendant Natalie Anderson is a person and former employee of Ruiz and Louvin Enterprises, LLC and is a resident of Texas. At all times pertinent to this case, Counter-Defendant Anderson was employed by Counter-Plaintiff in Bexar County, Texas. Counter-Defendant Anderson may be served by and through her attorney, Douglas B. Welmaker, at 409 N. Fredonia Suite 118, Longview, TX 75601.

## JURISDICTION AND VENUE

3. Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Counter-Plaintiff's similar state claims that arise under the Texas Theft Liability Act, which is codified in TEX. CIV. PRAC. REM. CODE ANN. § 134.001-004 . (hereinafter referred to as the "TLA"), because such claims are so related to the claims within the Court's original jurisdiction (FLSA wage dispute) that they form part of the same case or controversy under Article 3 of the United States Constitution. Counter-Plaintiff also brings claims under Texas laws for Counter-Defendant's mismanagement and conversion of funds.

4. Venue is proper in this judicial district since all Counter-Defendant's unlawful practices alleged herein, and/or the adverse effects from these unlawful practices negatively affecting Counter-Plaintiff, were committed and/or occurred in San Antonio, Texas, located in this judicial district pursuant to 28 USC § 1391.

## NATURE OF THE ACTION

5. This is an action brought pursuant to the Texas Theft Liability Act, fraud, misrepresentation, breach of fiduciary duties, and conversion to correct and recover for Counter-Defendant Anderson unlawful practices by mismanaging and converting downpayments payments for her own personal use and gain. Upon information and belief, Counter-Defendant Ander was keeping cash deposits and not recording the amounts in Counter-Plaintiff's books. After an investigation, it was determined that $112,260 in case was not properly deposited into Counter-Plaintiff's bank accounts and many efforts were made to hide and misappropriate the funds by manipulating Counter-Plaintiff's financial records and payment documentation.

6. Counter-Defendant Anderson filed suit against Counter-Plaintiff seeking recovery of wages in violation of the FLSA. After a reasonable investigation it has been uncovered that Counter-Plaintiff has violated the TLA and is liable for the damages resulting from the theft.

**FACTS**

7.      Counter-Defendant, Natalie Anderson, was hired by Counter-Plaintiff in April 2022 as a Title Clerk and remained an employe until May 2023.

8.      Counter-Defendant Anderson was the only person who both had access to the cash down payments kept in a secure location (outside of owners Eric and Megan Louvin) and Anderson was responsible for the accounting of all cash deposit amounts and cash collections.

9.      In May 2023, Counter-Plaintiff began to suspect Anderson was engaging in employment theft and after Counter-Defendant requested a meeting with Anderson, she quit and filed a lawsuit under the FLSA. Counter-Plaintiff was then forced to hire a private investigator to uncover the theft and fraudulent practices of Anderson.

10.     In November 2023, Counter-Plaintiff's private investigator and accounting firm to investigate employment theft after it discovered that cash down payments were not being deposited in the dealerships bank account. Counter-Plaintiff learned that the record of cash deposits were not matching what was being deposited into the bank account. Specifically, the receipts would include the correct amount but the deposit details would be wrong because they were missing cash.

11.     The process for receiving and recording customers' downpayments in conjunction with purchasing a vehicle, include (1) a downpayment agreement with the recording date – the downpayment could be cash, credit card, or check, and the amounts were recorded in the down payment agreement; (2) a down payment receipt was then recorded listing the amount of the down payment and the form of payment (original kept by Counter-Plaintiff and copy to customer) – for cash downpayments the notes would include the denomination of total number of bills and kept in a secure location; (3) at the end of the day the cash for each transaction was removed from the secure location and counted and verified; and (4) the deposits were detailed in a form with the

corresponding customer name, cash amount, VIN number, which generated a QuickBooks invoice with the corresponding accounts receivable for the transaction.

12. Counter-Plaintiff learned cash down payments wee not being deposited to the dealership's bank account and found customer cash down payments were not being correctly processed. The record of cash deposits did not match what was being deposited in the bank account. Counter-Plaintiff was forced to reconcile all its cash deposits, which showed current amounts as bad debts. The undeposited funds revealed funds which had not been deposited, despite having being recorded by Counter-Defendant Anderson in QuickBooks.

13. Counter-Defendant Anderson was the only person to have access to both the cash down payments that were kept in a secure location and Anderson was responsible for accounting for it, which included abiding by the process for receiving and recording customers' downpayments.

14. The Investigator concluded: the missing cash was from the undeposited funds and bad debts, and based on its investigation it determined that $112,260 in case was not properly deposited in Counter-Plaintiff's bank account during the time of Defendant Anderson's employment. The investigator also uncovered many efforts were made to hide and misappropriate the funds by manipulating the financial records and payment documentation, all of which Counter-Defendant Anderson was responsible for and had access to.

15. As a result of the theft and conversion, Counter-Plaintiff has suffered damages in the amount greater than $112,260 based on the unforeseen circumstances of hiring an investigator and determining the bad-debts converted and or caused by Defendant Anderson. Counter-Plaintiff has no other option but to bring claims against Defendant Anderson for her actions.

## CAUSES OF ACTION

### 1. TEXAS THEFT LIABILITY ACT -  TEX. CIV. PRAC. REM. CODE ANN. § 134.001-004

16.     Counter-Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

17.     The elements of a cause of action for theft are: (1) plaintiff had a possessory right to the property; (2) the defendant unlawfully appropriated the property, including money, by taking it without the plaintiff's effective consent; (3) the defendant appropriated the property with the intent to deprive the plaintiff of the property; and (4) the plaintiff sustained damages as a result of the theft. Tex. Civ. Prac. & Rem. Code § 134.003(a), § 134.005(a) ; Tex. Pen. Code § 31.03(a) -(b) ; *Haler v. Boyington Cap. Grp.*, 411 S.W.3d 631, 635 (Tex. App.–Dallas 2013, pet. denied).

18.     Counter-Plaintiff had a possessory right to all cash deposits and down payments to be deposited in its bank account.

19.     After an investigation, it has been uncovered that Defendant Anderson appropriated cash deposits for her own personal gain within her role being responsible for cash deposits and accounting of downpayments.

20.     Counter-Defendant Anderson appropriated the property with the intent to deprive Counter-Plaintiffs access to the cash deposits and funds.

21.     As a result Counter-Plaintiffs have accounted over $112,260 in damages stemming from Counter-Defendant Anderson's theft and misappropriation of funds.  As a direct and proximate result of Counter-Defendant Anderson's theft, Counter-Plaintiff incurred direct damages including but not limited to, the loss of deposits, loss of opportunities, costs for hiring investigation and accounting firm, together with reasonable attorney fees and interest as allowed by law.

## 2. BREACH OF FIDUCIARY DUTY

22. Counter-Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

23. To succeed on a claim for breach of fiduciary duty, the plaintiff must show: "(1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages." While fiduciary duties are typically formal, informal fiduciary duties can exist. In Texas, an informal fiduciary duty can arise from "a moral, social, domestic or purely personal relationship of trust and confidence."

24. Here, a principal-duty is created given that Counter-Plaintiff gave specific trust to Counter-Defendant to have access to both the cash down payments that were kept in a secure location. Counter-Defendant Anderson was responsible for accounting for it, which included abiding by the process for receiving and recording customers' downpayments. Here, a fiduciary duty was created based on the actualities of Counter-Defendant's position and access to cash deposits from customers. Anderson had access to QuickBooks and the entry of cash deposits, which is beneficial to Counter-Plaintiff, who depend on the purpose of Anderson's work and relationship in its business.

25. Anderson had a fiduciary duty to handle cash deposits and she breached her duty by converting cash deposits for her own personal gain. Anderson's breach of her fiduciary duty has caused Counter-Plaintiff damages exceeding $112,260.

## 3. CONVERSION

26. Counter-Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

27.     To establish a claim for conversion, a plaintiff must prove that: (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiffs rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property.

28.     Counter-Plaintiff owned or had possession of cash deposits and was entitled to possession of cash deposits from downpayments from its customers.

29.     Counter-Defendant Anderson exercised control over cash deposits, inconsistent with her duty and responsibility to deposit the cash in Counter-Plaintiff's bank account.

30.     Counter-Plaintiff demanded to speak with Counter-Defendant Anderson regarding the missing cash, but Counter-Defendant Anderson evaded the requests, resigned from employment, and subsequently hired counsel to prevent further and future communication. Thus, Counter-Defendant refused to return the cash deposits.

**31.**     As a result Counter-Plaintiffs have accounted over $112,260 in damages stemming from Counter-Defendant Anderson's theft and misappropriation of funds.  As a direct and proximate result of Counter-Defendant Anderson's theft, Counter-Plaintiff incurred direct damages including but not limited to, the loss of deposits, loss of opportunities, costs for hiring investigation and accounting firm, together with reasonable attorney fees and interest as allowed by law.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Counter-Plaintiff prays that Counter-Defendant Anderson be cited to appear and answer herein, and that on final hearing, Counter-Plaintiff have judgment against Counter-Defendant Anderson for:

a. All damages to which Counter-Plaintiff may be entitled pursuant to this Original Complaint, or an amendment thereto, including but not limited to direct damages, compensatory damages, punitive damages, consequential damages;

b. Reasonable attorneys' fees as allowed by law (with conditional awards in the event of appeal);

c. Pre-judgment interest at the highest rate permitted by law;

d. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

e. Costs of Court; and

f. Such other and further relief, at law or in equity, to which Counter-Plaintiff may be entitled, whether by this Original Complaint or by proper amendment thereto.

Respectfully submitted,



**Alfonso Kennard Jr.**
Texas Bar No.: 24036888
Federal No.: 713316
Email: Alfonso.Kennard@kennardlaw.com
**Eddie Hodges Jr.**
Texas Bar No. 24116523
Email: eddie.hodges@kennardlaw.com
5120 Woodway Drive Suite 10010
Houston, Texas 77056
Telephone: (713) 742-0900

Facsimile: (713) 742-0951

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served on all counsel of record in accordance with the ECF/filing system on this 25th day of March 2024.

**Douglas B. Welmaker**
Attorney-in-Charge
State Bar No. 00788641
Welmaker Law, PLLC
409 N. Fredonia, Suite 118
Longview, Texas 75601
Phone: (512) 799-2048
Email: doug@welmakerlaw.com

_____
**Alfonso Kennard, Jr.**