IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| NATALIE ANDERSON, TIFFANY VASQUEZ AND BRIANA BALDERAS, <br><br>Plaintiffs, <br><br>v. <br><br>RUIZ AND LOUVIN ENTERPRISES, LLC, ERIC LOUVIN, MEGAN LOUVIN, <br><br>Defendants. | § § § § § § § § § § § § § <br><br>Case No. 5:23-cv-911-XR |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR LEAVE**

Plaintiffs Natalie Anderson, Tiffany Vasquez and Briana Balderas ("Plaintiffs") file this Response to Defendants' Motion for Leave to Amend to add a counterclaim and in support thereof would show as follows:

**Introduction**

1. Aside from the fact that Defense counsel did not confer with Plaintiffs' counsel about leave to file a counterclaim, contrary to their certificate of conference on their Motion for Leave (Dkt. 14), Defendants' request for permission to file a counterclaim months after the pleadings deadline <u>and</u> after discovery is now over has no merit and should be denied.

**Defendants Cannot Show Good Cause**

2. The deadline to amend pleadings in this case was December 13, 2023. Dkt. 10. Defendants now seek leave to file a counterclaim three and one-half months after their deadline expired. Notably, this desire to amend was not based upon any discovery conducted by Defendants, as they filed their Motion for Leave prior to the due date of Plaintiffs' discovery

responses (Plaintiffs' discovery responses were due March 28, 2024 and discovery ended March 29, 2024).

3.      Upon review of the "investigation" Defendants commissioned that allegedly forms the basis of their desire to file a counterclaim (which in itself is meritless in the FLSA context, as addressed below), it is apparent that Defendants have had such information in their possession since November of last year, as the investigation summary, addressed to Defendants, is dated November 27, 2023:

**REPORT OF EXAMINATION**
**Conducted by Fred Olivares, CPA/CFF, PLLC**

TO:     Eric and Megan Louvin, R&L Certified Auto Group

FROM:   Fred Olivares, CPA/CFF, CFE, CAMS, PI

RE:     Investigation of allegations of misconduct

DATE:   November 27, 2023

Louvin 00160.

4.      Defendants were thus alerted to the alleged "wrongdoing" within weeks after the scheduling order was issued in this case. In spite of this fact, Defendants now seek "four to five months" to conduct discovery related to such "misconduct" because "Defendants have uncovered theft by Plaintiff Natalie Anderson and now presents counterclaims against Defendant Anderson after a reasonable investigation occurred while this lawsuit was pending." Dkt. 14, p. 4. Defendants neglect to inform this Court that any alleged wrongdoing was based on information that Defendants had in their possession and sat on for three and one half months.

5. Indeed, Defendants actually assert that "Although the Motion for Leave deadline was December 13, 2023, Defendants have acted diligently in filing this Motion seeking Leave to file its counterclaims, once the claims were available to assert after a reasonable investigation." Dkt. 14, p. 4.

6. In discussing the timeliness of their Motion, Defendants assert the following gobbledygook:

> Here, Defendants explanation is that this investigation into Plaintiff Anderson occurred while this case was pending, *and after the conclusion Defendants prepared the next steps to present these claims in Court. Defendants timely filed an Original/Amended Answer in this case and has since acted diligently. Defendants have needed additional time to conduct discovery and produce relevant documents in this case*. Thus, even though this Motion is three-months after the pleading deadline, it is solely due to preparing and gathering information from the investigation to present in this lawsuit.

Dkt. 14, p. 5 (emphasis added).

7. Defendants neglect to inform the Court what "next steps" were necessary to "present these claims in Court" and why such next steps took almost exactly four months to complete. Indeed, at the time Defendants' Motion for Leave was filed, March 25, 2024, Defendants had produced quite literally nothing, despite arguing to the Court in their Motion for Leave that "Defendants have needed additional time to conduct discovery and produce relevant documents in this case."[1] To argue that their Motion was timely and that the delay was simply because of "preparing and gathering information from the investigation" when Defendants were made aware of the information they claim supports their counterclaims in November 2023 is, at best, disingenuous. At worst, it is misleading.

---

[1] As previously noted in Plaintiffs' Motion for Partial Summary Judgment, this is not a collective or a class action. This is a three-plaintiff unpaid overtime case against a used car dealership. The issues are neither novel nor complex, nor was the discovery propounded to Defendants novel or complex. Plaintiffs timely sent out discovery in this case on December 15, 2023 and as of March 25, 2024, more than three months later, had still not received one single response or document.

3

8. Defendants next argue that granting the Motion for Leave will not cause prejudice to Plaintiffs because "the foundation of discovery has been completed." Dkt. 14, p. 6:

> …filing its counterclaims will not cause prejudice to Plaintiffs because wages earned and administrative duties by Anderson are already in the case as a defense and facts. Moreover, because these factual issues are already in the case, Defendant asserts that the foundation of discovery has been completed, but additional discovery and time to review relevant documents would cure any prejudice by Plaintiffs.

Dkt. 14, p. 6.

To be perfectly clear, Defendants are representing to the Court that as of the date they filed their Motion for Leave, March 25, 2024, the "foundation of discovery has been completed," even though Defendants had still not responded to Plaintiffs' discovery, which was propounded on them more than three months earlier and even though Plaintiffs' responses to Defendants' last minute discovery requests were not yet due as of March 25, 2024.

9. Aside from this distortion of the facts, Defendants have provided no factual basis upon which to conclude that prejudice will not result from reopening the case, after both the pleadings and discovery deadlines have passed, and after Defendants have quite literally done nothing in this case for four months, so that Defendants can pursue a counterclaim that cannot be brought in the first instance.

10. Finally, Defendants state the following:

> Plaintiffs may argue that Defendants have caused delay in this case by waiting until near the deadline to conduct discovery and file this Motion. However, Defendants have given notice to Plaintiffs on multiple occasions that more time was needed to conduct discovery due to pending trial deadlines in other matters, and the diligent efforts to provide adequate responses to discovery.

Dkt. 14, p. 6.

11. It is true that Defendants have waited until the last possible moment to propound discovery, after refusing to respond to discovery for almost three months, and after having had the

4

information that forms the basis for their counterclaims for four months. It is not true that Defendants notified Plaintiffs that more time was needed to conduct discovery "due to pending trial deadlines" much less that such notifications occurred on multiple occasions. The fact of the matter is this: Defendants cannot show good cause for their Motion for Leave or for their delay in seeking a Motion for Leave. As such, the Motion should be denied.

### **Defendants' Counterclaims Are Inappropriate in the FLSA Context**

12. Even had Defendants shown good cause in support of their Motion for Leave, which they have not, granting Defendants' Motion for Leave would be futile, as Defendants' proposed counterclaim would immediately be subject to 12(b)(1) Motion to Dismiss. Federal courts have limited subject matter jurisdiction and this Court lacks jurisdiction to consider Defendants' proposed state-law counterclaim. Original jurisdiction does not exist because Defendants' counterclaim is not compulsory. *See Revere Copper & Brass, Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709, 712 (5th Cir. 1970). Under Fed. R. Civ. P. 13, a compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."

13. In deciding whether a counterclaim is compulsory, a court must resolve each of the following: (1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether *res judicata* would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim. *Tank Insulation Int'l Inc. v. Insultherm, Inc.*, 104 F.3d 83, 85–86 (5th Cir.1997) (citation omitted).

14. Defendants' proposed counterclaim involves different issues of fact and law from

Plaintiffs' FLSA claims. Plaintiffs' FLSA claims arise from the work that Anderson, Vasquez and Balderas performed for Defendants, and concern Defendants' misclassification and failure to pay wages for hours worked over forty per workweek. In contrast, Defendants' counterclaim arises from Anderson's alleged theft of money from Defendants.[2] The counterclaim turns on conduct separate and apart from whether Defendants failed to pay overtime compensation to Plaintiffs. There is simply no overlap in the facts or law involved in the different claims. *See, e.g., Jackson v. Hardrock Landscapes, LLC*, No. 1:21-CV-1003-DH, 2023 WL 2672402, at *3 (W.D. Tex. Mar. 28, 2023) (defendants' conversion claim met none of the requirements of a compulsory counterclaim in FLSA suit; it was based on the plaintiff's alleged failure to return company-owned property, and thus bore no factual or legal relation to hours worked and whether the plaintiff was paid overtime for those hours). *See also Iniesta v. Ula's Washington, LLC*, No. H-17-2668, 2018 WL 3912256, at *3 (S.D. Tex. July 18, 2018), report and recommendation adopted, 2018 WL 3880286 (S.D. Tex. Aug. 15, 2018) (concluding that restaurant's counterclaims for theft, conversion, and fraud, which were related to an allegation that employee pocketed money paid by the restaurant's customers, had "nothing to do with the number of hours Plaintiff worked or the manner in which his tips were calculated").

15. Second, *res judicata* would not bar Defendants from later raising their counterclaim, as *res judicata* only "bar[s] litigation of 'issues which were actually litigated and all issues which might have been raised in that earlier suit.'" *Tank*, 104 F.3d at 87. The parties will not litigate issues regarding Anderson allegedly taking money from an unlocked drawer in resolving the issue of unpaid compensation owed to Plaintiffs. *See Jackson v. Hardrock*

---

[2] Money which, as it so happens, Defendants stored in an unlocked desk drawer, accessible to anyone in the office. It should also be noted that Plaintiff Anderson is but one of many individuals whom Defendants have accused of theft.

*Landscapes,* LLC, 2023 WL 2672402, at *3 (finding counterclaim for conversion not to be compulsory, as, among other things, such a claim would not be barred by res judicata, because conversion is different from a claim made under the FLSA, *citing to Cortes v. Distribuidora Monterrey Corp.*, No. 3:08-CV-1077-M, 2008 WL 5203719, at *1 (N.D. Tex. Dec. 11, 2008) (holding that employer's counterclaims for breach of contract, conversion, and theft "would not be barred by res judicata if brought in a later suit, because they do not involve the same claim or cause of action as the FSLA claim").

16. Third, it is clear that different evidence will be necessary to support or refute Anderson's FLSA claims and Defendants' counterclaim. The FLSA claim relies on Defendants' time, pay and job duty records, none of which have any connection to whatever evidence Defendants theoretically possess that would prove theft.

17. Finally, no logical relationship exists between Plaintiffs' FLSA claims and Defendants' counterclaim. The Fifth Circuit favors the "logical inquiry" test. *See Nat'l Liability & Fire Ins. Co. v. R & R Marine, Inc.*, 756 F.3d 825, 835 (5th Cir.2014); *Ormet Primary Aluminum Corp. v. Ballast Techs., Inc.*, 436 F. App'x 297, 299 (5th Cir.2011). A logical relationship exists where "the same operative facts serve[ ] as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Nat'l Liability*, 756 F.3d at 825 (citation omitted). As illustrated above, even a cursory review of the FLSA claims and Defendants' counterclaim reveals that the parties' respective pleadings refer to completely different factual circumstances.

18. Even were supplemental jurisdiction over Defendants' counterclaim a possibility, which it is not, the Court still should decline to exercise it. Section 1367(c) states that "district courts may decline to exercise supplemental jurisdiction," among other things, when "there are

other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4).

19. Congress enacted the FLSA to protect employees from "the evil of 'overwork' as well as 'underpay.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (citations omitted). To achieve its humanitarian goals, the FLSA guarantees a federal minimum wage and requires employers to pay employees who work more than 40 hours per work week a wage premium of not less than one and one-half times an employee's regular rate of pay. 29 U.S.C. §§ 206 and 207.

20. To protect these important wage rights, FLSA litigation differs from other kinds of employment litigation; the types and kinds of counterclaims and defenses an employer may assert in a FLSA suit are circumscribed for obvious and straightforward reasons:

> The federal courts were not designated by the FLSA to be either collection agents or arbitrators for an employee's creditors. Their sole function and duty under the Act is to assure to the employees of a covered company a minimum level of wages …The only economic feud contemplated by the FLSA involves the employer's obedience to minimum wage and overtime standards. To clutter [FLSA] proceedings with the minutiae of other employer-employee relationships would be antithetical to the purposes of the Act.

*Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir.1974), rev'd on other grounds, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988)

21. Courts in the Fifth Circuit have been hesitant to permit an employer to file counterclaims in FLSA suits for money the employer claims the employee owes it, or for damages the employee's tortious conduct allegedly caused. *Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 741 (5th Cir.2010) (citing *Brennan*, 491 F.2d 1, 4 (5th Cir.1974) and *Donovan v. Pointon*, 717 F.2d 1320, 1323 (10th Cir.1983) ("[T]he purpose of the present action is to bring Pointon into compliance with the Act by enforcing a public right. To permit him in such a proceeding to try his private claims, real or imagined, against his employees would delay and even subvert the whole

process."). For similar reasons, set-offs are prohibited in FLSA actions except in the narrow circumstance when "the money being set off can be considered wages that the employer pre-paid to the employee-plaintiff. *Martin,* 628 F.3d at 741 (interpreting *Singer v. City of Waco*, 324 F.3d 813 (5th Cir.2003) and *Gagnon v. United Technisource*, Inc., 607 F.3d 1036 (5th Cir.2010)).

22. In *Gagnon*, the district court refused to address contract and fraud counterclaims brought by the defendant-employers against an FLSA plaintiff. *Id.* at 1040. The employers appealed, arguing that the district court erred by not addressing the proposed counterclaims. The Fifth Circuit affirmed, stating that although the employers' claims were meritless, "our precedent suggests that such claims should not be addressed in a[n] FLSA action." *Id.* at 1042 (citing *Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir.1974), rev'd on other grounds, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (noting that the only function of the federal judiciary under the FLSA "is to assure to the employees of a covered company a minimum level of wages" and holding that "[a]rguments and disputations over claims against those wages are foreign to the genesis, history, interpretation, and philosophy of the [FLSA]")).

23. Based on *Heard*, *Martin*, *Gagnon* and their progeny, other Texas federal courts have relied steadfastly on the special nature of FLSA rights to decline to exercise supplemental jurisdiction over defendant-employers' permissive counterclaims against FLSA plaintiffs. *See, e.g., Alford*, No. 3:13-cv-4546-L, 2014 WL 6977639 (N.D.Tex. Dec. 10, 2014); and *Coronado v. D.N.W. Houston, Inc.,* No. H-13-2179, 2014 WL 2779548 (S.D.Tex. June 19, 2014). Thus, even assuming supplemental jurisdiction exists, the facts and circumstances of this FLSA action and Defendants' proposed theft counterclaim provide "compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4).

For all of the above reasons, Defendants' Motion for Leave should be denied.

Respectfully submitted,

WELMAKER LAW, PLLC

/s/ Douglas B. Welmaker
Douglas B. Welmaker
Attorney-in-Charge
State Bar No. 00788641
Welmaker Law, PLLC
409 N. Fredonia, Suite 118
Longview, Texas 75601
Phone: (512) 799-2048
Email: doug@welmakerlaw.com

**ATTORNEY FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been electronically served on all counsel of record via Notice of Electronic Filing on a known Filing User through the CM/ECF system on April 8, 2024.

/s/ Douglas B. Welmaker
Douglas B. Welmaker

10